JOSEPH PLAZA, PLAINTIFF-RESPONDENT, v. ANTHONY FLAK AND FRANCES FLAK, HIS WIFE, DEFENDANTS-APPELLANTS.

Argued April 23, 1951—Decided May 28, 1951.

*Mr. Louis C. Friedman* argued the cause for the appellants (*Messrs. Ward & Friedman,* attorneys).

*Mr. Manfield G. Amlicke* argued the cause for the respondent (*Mr. Isadore Rabinowitz,* of counsel).

The opinion of the court was delivered by

BURLING, J.   This is a civil action involving the conflicting claims of the plaintiff, Joseph Plaza, and the defendants, Anthony Flak and Frances Flak, his wife, to rights in lands mutually adjacent to their respective dwellings in the City of Passaic, and there is brought here for review a judgment of the Chancery Division of the Superior Court adverse to the

defendants. Defendants' appeal was addressed to the Appellate Division of the Superior Court and while pending there was certified to us upon our own motion.

The parties to this litigation are the owners of adjoining improved lots situate on Van Buren Street in the City of Passaic. The improvement on each lot consists primarily of a two-family house. Between these two structures there exists an areaway 4.75 feet in width, approximately bisected by the joint property line of the premises. It was stipulated at the trial that common owners of the two properties caused both the houses to be erected at the same time, some 38 or 40 years before the trial of this matter. The common owners conveyed out the property now owned by plaintiff to his predecessor in title on April 27, 1914, and that now owned by defendants to their predecessor in title on May 7, 1915. The area between the two houses was used in common as an alleyway by the owners and tenants of both properties until 1948 when the defendants erected a fence on the boundary line in the approximate center of the area. The plaintiff instituted this action to obtain a judgment compelling defendants to remove this fence, and defendants counterclaimed, seeking by that means to require plaintiff to remove another fence which extends for ten feet along the rear portion of the joint boundary line, which latter fence encroaches upon the defendants' property. Counsel for both parties signed the pretrial order waiving any rights which either of them may have had to a trial by jury. A trial to the court concluded in a judgment of the Chancery Division of the Superior Court filed on February 2, 1951, granting the relief sought by the plaintiff and denying the relief sought by the defendants in their counterclaim. Defendants appealed from the whole of the judgment to the Appellate Division of the Superior Court and while awaiting consideration there the matter was certified to this court upon our own motion.

Three questions are presented by this appeal. Of these two are similar substantive matters: the first relates to plaintiff's alleged prescriptive right to an easement over that

portion of defendants' premises contained within the areaway between the houses, the second concerns plaintiff's right by adverse possession to retain that portion of defendants' premises contained within the ten feet of fence on the rear of the boundary line between the premises. The third question is whether the defendants were deprived of due process of law in that they were denied a jury trial by the pretrial waiver thereof signed by their counsel. We deem the problem presented by the question of easement by prescription to be the crux of this case, so accord it first consideration here.

The gist of plaintiff's claim is that he has acquired an easement by prescription over that portion of defendants' premises contained within the area or alleyway between the parties' houses. It is well understood that "prescription" is the term usually applied to the acquisition of incorporeal hereditaments by adverse user, while "adverse possession" is the term applied in matters concerning title to lands. *Black's Law Dict.* (3rd ed., 1933), *p.* 1405. Compare *Clement v. Bettle,* 65 *N. J. L.* 675, 678 (*E. & A.* 1901) ; 1 *Thompson on Real Property* (*Perm. Ed.,* 1939), *sec.* 414, *pp.* 675, 677. Prescription has been a subject of discussion in our courts with some degree of regularity, hence it is necessary only to refer here to the principles laid down in the decisions, and not to repeat the history and development of this phase of our law. The American and English authorities are analyzed in *Lehigh Valley R. R. Co. v. McFarlan,* 43 *N. J. L.* 605, 617–630 (*E. & A.* 1881).

At an early date, it was laid down that the doctrine of prescription is based upon an analogy to the statutes of limitation which are concerned with adverse possession of land, although originally stemming from a theory or legal fiction of lost grant, which latter theory is more or less in disrepute today, and is dependent upon the same principles as adverse possession. *Cobb v. Davenport,* 32 *N. J. L.* 369, 385, 387 (*Sup. Ct.* 1867). This is likewise the general view. 17 *Am. Jur., Easements, sec.* 55; 1 *Thompson on Real Property,* (*Perm. Ed.,* 1939), *sec.* 415, *pp.* 677-680; *Minor on Real*

*Property* (2d ed. *Ribble,* 1928), *Vol. II, sec.* 984; *Commentaries on Law of Real Property* (*Walsh,* 1947), *Vol. II, sec.* 238; *Burby on Real Property* (1943), *sec.* 68; 16 *Harv. L. Rev.* 438, 439.

Therefore, there must exist a user that is adverse, hostile, continuous, uninterrupted, visible and notorious. *Cobb v. Davenport, supra, p.* 385; *DeLuca v. Melin,* 103 *N. J. L.* 140, 144 (*E. & A.* 1926). This must be a continuing, open, visible and exclusive user, hostile, showing intent to claim as against the true owner, and must be under a claim of right with such circumstances of notoriety as that the person against whom it is exercised may be so aware of the fact as to enable him to resist the acquisition of the right before the period of prescription has elapsed. *Poulos v. Dover Boiler & Plate Fabricators,* 5 *N. J.* 580, 588 (1950); *Carlisle v. Cooper,* 21 *N. J. Eq.* 576, 596 (*E. & A.* 1870).

Although there are some decisions elsewhere to the contrary, the general rule to be drawn from the authorities is that where adjoining proprietors lay out a way or alley between their lands, each devoting some portion of his premises to that purpose, and such area is used for the prescriptive period by the respective owners or their successors in title, neither can obstruct or close that portion of the area which is within the boundary of his own land. The mutual use of the whole of such alley or way will be considered adverse to a separate or exclusive use by either. 28 *C. J. S., Easements, sec.* 18, *p.* 673; *Johnson v. Whelan,* 98 *A. L. R.* 1096, 171 *Okla.* 243, 42 *P. 2d,* 882 (*Okla. Sup. Ct.* 1935); *Anno.* 98 *A. L. R.* 1098-1103. Compare 1 *Thompson on Real Property* (*Perm. Ed.,* 1939), *sec.* 422, *p.* 697.

From an early period in this State, although the burden of proof of the elements of prescription is upon the party claiming the right to an easement by prescription, it has been held that a presumption of adverse use arises from uninterrupted user of 20 years or more, and the burden is then upon the opposing party to rebut the presumption. This he may do by contradicting or explaining the facts upon

which it rests, but not by proof in denial of a grant, *i. e.*, the grant assumed in the fiction of prescription, or he may prove the use was contentious or interrupted during the period of prescription. He may overcome the presumption of adverse use and the right to the easement arising therefrom by proof of permission *asked and granted*, that it was secret user, or that it was such use as to be neither physically capable of prevention or of action. *Lehigh Valley R. R. Co. v. McFarlan, supra, p.* 621; *Clement v. Bettle, supra, pp.* 678-679; *National Silk Dyeing Co. v. Grobart*, 117 *N. J. Eq.* 156, 164 (*Ch.* 1934); *DeLuca v. Melin, supra.* Compare 29 *Harv. L. Rev.* 88, 89; 1 *Thompson on Real Property* (*Perm. ed.,* 1939), *sec.* 418, *pp.* 683-686, *sec.* 435, *p.* 716, *sec.* 436, *pp.* 718-721; 2 *Thompson on Real Property* (*Perm. ed.,* 1939), *sec.* 525, *pp.* 114, 115. There appears to be a conflict of authority elsewhere concerning the presumption to be drawn from the open, continuous, exclusive and uninterrupted use by the adverse claimant for the prescriptive period. Some jurisdictions adhere to the presumption of adverse use, and some to the presumption of permissive use. 17 *Univ. of Chicago L. Rev., p.* 211 (1949). Compare *Poulos v. F. H. Hill Co.*, 401 *Ill.* 204, 81 *N. E.* 2d 854, 859 (*Sup. Ct. Ill.* 1948). It is suggested by the defendants that New Jersey is among the latter, by virtue of *Weber v. Gerber Holding Co.*, 138 *N. J. Eq.* 544, 547-548 (*Ch.* 1946) reversed on the ground that the former Court of Chancery lacked jurisdiction, *sub nomine Weber v. L. G. Trucking Corp.*, in 140 *N. J. Eq.* 96 (*E. & A.* 1947). Compare 1 *Rutgers L. Rev.* 313 (1947), wherein the author discussed the *Weber* case, but considered the decision insufficient to show adherence to the theory of permissive use. See also III *Intramural L. Rev.* (*N. Y. U.*) 176, 180-181 (1948), wherein the author, also discussing the *Weber* case, concludes that New Jersey continues to stand on the theory of the presumption of adverse use. It is to be noted that the decision of the former Court of Chancery in the *Weber* case, *supra*, (at *p.* 547) affirmed the preexisting rule stated in *Clement v. Bettle, supra* but asserted that the

circumstances of the *Weber* case required a different presumption. The decision in the *Weber* case appears to have been grounded on the rule that the determination whether the possession is sufficiently hostile and notorious to oust the true owner depends upon the situation and condition of the property and the uses to which the true owner designedly or permissively subjects it. *Cobb v. Davenport, supra, p.* 385; compare *Pirman v. Confer* 273 *N. Y.* 357, 7 *N. E.* 2d 262, 111 *A. L. R.* 216, 220 (*Anno. at p.* 221 *et seq.*). This latter rule was recently reaffirmed by us in *Poulos v. Dover Boiler & Plate Fabricators, supra.*

█ From an analysis of the authorities above cited it appears: first, that the plaintiff has the burden of sustaining his claim of adverse user; second, when the plaintiff, or the one claiming the right to an easement by prescription, shows open, continuous, uninterrupted, exclusive use for the prescriptive period with the acquiescence of the owner of the servient estate, he has carried his initial burden and a presumption arises that the use was adverse, the burden of adducing evidence contrary to that presumption thus being cast upon the opposing party. The burden of proof remains upon the plaintiff to establish the prescription by the preponderance of the evidence. Compare on the effect of presumption in general *Abbott's Civil Jury Trials* (5th ed., *Viesselman,* 1935), *sec.* 179, *p.* 411, *sec.* 188, *p.* 424; *Summary of American Law* (*Clark,* 1947), *secs.* 63, 64, *pp.* 602, 604; and third, there is a conflicting presumption with the foregoing rule which may arise where the situation and condition of the land and the uses thereof place the property in the category of vacant, unimproved land, unenclosed, where the use is casual rather than customary. Where land is in that category the use is presumed to have been permissive. We do not have a situation such as is included within the latter rule here. *Cf. Poulos v. F. H. Hill Co., supra,* at *p.* 859.

██ An examination of the evidence in the record before us shows that plaintiff's use and that of his predecessors in

title of defendants' portion of the alleyway, was continuous, open and notorious for approximately 34 years, more than the prescriptive period. This was not contested, and was indeed supported by defendants' proofs. Defendants, however, place emphasis on the requirement that the use be exclusive, hostile, with intent to claim as against the true owner, and such as to put defendants on their guard that they might eventually suffer an easement to exist by prescription in their portion of the alleyway. The elements of proof of the latter factors clearly exist in this case. There was never any objection to the use, although it was not concealed; there was no reason to conceal it; there were no agreements concerning the use of the alleyway; "There was no permission; we just used it." It is inescapable from a reading of the entire testimony before us that plaintiff's and his predecessor's use was under claim of right and with the intent to claim that right against the true owner, and that it was such use as should have warned defendants that plaintiff might acquire a prescriptive easement. On the other hand, defendants make no proof concerning permissive use. On the contrary they show no permission was asked or given. It is suggested that their proofs tend to show permissive use in that the alleyway was paved by the joint owners at or near the time the dwellings were erected. If a license to the occupants of either dwelling had been given by the former owners, such would have been revoked by the conveyance of the title to others, and the continued use by the occupants of either dwelling would thereafter have been adverse to the owner of the fee of the other lands. Compare *East Jersey Iron Co. v. Wright*, 32 *N. J. Eq.* 248, 252 (*Ch.* 1880); *Page v. Gaskill*, 84 *N. J. L.* 615, 617 (*E. & A.* 1913). The evidence in the instant case points clearly not to permissive use, but to acquiescence in the claim of right made by plaintiff and his predecessors in title. On this phase of the case we hold that the plaintiff's prescriptive right in the alleyway was sufficiently proved. Naturally, as was admitted by plaintiff, defendants have a corresponding right in plaintiff's portion of the area.

On the second phase of the case, the question is whether the evidence supports a finding of adverse possession in favor of plaintiff as against defendants' counterclaim for removal of the older fence in the rear portion of the lots. The elements of proof are substantially the same as those required for prescription, discussed in the foregoing portion of this opinion, and repetition here has no value. The old fence in the rear had been there for 25 years prior to the time plaintiff acquired the property. It obviously constituted an open, continuous, hostile, notorious holding under claim of right and with intent to assert such claim as against the true owner. We find plaintiff sufficiently proved an adverse possession in this respect.

Finally, defendants contend that they were deprived of substantial rights by the waiver of trial by jury effected by their counsel on signing the pretrial order, and that *Rule 3:38-1* of this court is unconstitutional to the extent that it permits such waiver. We hold this contention to be without merit. In *Steiner v. Stein*, 2 *N. J.* 367, 378, 379 (1949), we held that under the letter and spirit of the Constitution of 1947 actions formerly maintainable in the Court of Chancery, where the primary right or relief sought is equitable, should be brought in the Chancery Division of the Superior Court, and such jurisdiction having attached, the court may proceed to a final determination of the entire controversy, and " '* * * except where the jurisdiction of equity depends on the prior establishment of a right at law, settle purely legal rights and grant legal remedies,' *Fleischer v. James Drug Stores, Inc.*, 1 *N. J.* 138, 150 (1948). * * * Wherever an issue of fact was triable without a jury under the Constitution of 1844, it is triable without a jury under the Constitution of 1947. The constitutional provision preserving trial by jury inviolate does not enlarge the scope of the right to trial by jury; it merely precludes its attrition by either the legislature or the courts. Nor does it prevent litigants from waiving their right to trial by jury as heretofore; see *Rule 3:38-1.*"

Rights of the nature involved in this case were protected in equity, but prior thereto had to be established at law, under the former practice. *Weber v. L. G. Trucking Corp., supra.* But at law under the former practice it was long established that trial by jury could be waived in civil cases or proceedings. *Sexton v. Newark Dist. Telegraph Co.,* 84 *N. J. L.* 85 (*Sup. Ct.* 1913), affirmed *per curiam* 86 *N. J. L.* 701 (*E. & A.* 1914). Compare *O'Neil v. Vreeland,* 6 *N. J.* 158 (1951). It is likewise a common practice for attorneys to act for their clients in effecting such a waiver as an incident to the prosecution of a suit. Further the defendants were present at and participated in the trial and made no objection to the lack of a jury. Compare *Bernstein & Loubet, Inc. v. Minkin,* 118 *N. J. L.* 203, 205 (*E. & A.* 1937).

For the reasons above stated, the judgment of the Chancery Division of the Superior Court is affirmed.

*For affirmance in toto*— Justices CASE, WACHENFELD, BURLING and ACKERSON—4.

*For affirmance as to counterclaim and for reversal as to the alleyway*—Chief Justice VANDERBILT, and Justices HEHER and OLIPHANT—3.