SHANNON, Judge.
This appeal is from a decree dismissing the amended complaint with prejudice. The appellant was the plaintiff in the court below and the appellees were the defendants.
The plaintiff filed an amended complaint seeking a temporary mandatory injunction requiring the defendants to remove all obstructions from what it alleged was a public road and also, in a final hearing sought a permanent injunction against the defendants. The defendants filed an answer and the plaintiff filed a special reply. The Chancellor, by his final decree, after the plaintiff’s evidence was in, dismissed the amended bill of complaint with prejudice. The plaintiff brought its appeal to this court.
In its amended complaint the plaintiff alleged that, among other things, there was now and there had been for many years a certain public road running from State Road No. 475 westerly to Alto and thence southerly to State Road No. 44 which, according to the amended complaint, had been in use by the public for over sixty-five years; that the said road had been maintained by Sumter County continuously and uninterruptedly for a period of over twenty years prior to June 18, 1956. The said road, being worked upon by servants and employees of the county, and was graded, filled in and otherwise maintained as such a county road using county equipment and labor for the traveling public in general for a period of more than thirty years. The amended complaint then alleges that on or about June 18, 1956, the defendants illegally and unlawfully caused certain obstructions in the form of fences, locked gates and other obstructions to be placed upon the said road as to completely block it. The defendants generally denied the allegations in the amended complaint and the plaintiff filed a special reply in which it sought to set out certain facts which would estop the defendants from denying that the said road was a public highway. The plaintiff then produced its evidence which consisted of the county surveyor, who put in evidence a plat of the road in question and who testified that three miles of the road had been clayed and numerous fills, one fill was approximately one-half mile in length, and most of the fills had crossed drainpipes under them. In addition to the county engineer, there were numerous other witnesses from which it could be readily ascertained that the road had been used for a period of over forty-seven years. One witness testified to having traveled the road since 1913 or 1914 and having worked on it as an employee of Sumter County around 1915 or 1916. Another witness testified that he had traveled the road for 20, 25 or 30 years. One witness testified that he had traveled over the road since before 1909 and that he was a road overseer under several county supervisors and that he had worked this road filling up holes, cutting roots, building fills and rebuilding the bridge at Mill Creek and, as an employee of the county, he had kept the road open for public travel. Another witness testified that he had some thirty or thirty-five years ago worked for the county on this road cutting out roots, moving logs and filling up holes and that the road was being used as a public road at that time. We have given an example of the testimony of several witnesses for the plaintiff that that road was in use, and being maintained by the county well over twenty years. One witness testified that he had, in 1952 and 1955, hauled sand and clay for the road and another witness testified *305 that he had, as a county employee, worked on the road from 1946 to 1948. There is no question that the road was a public one for a period of over twenty years until the defendants placed the obstructions on the highway and also, there is no question of non-user of the road.
The Chancellor below apparently had the view that the use of it by the public, as well as by the county in its upkeep, was a permissive one and, in view of the fact that the road ran through wild and unimproved land, the plaintiff’s use of the same was merely permissive and not adverse. The evidence of the defendants may show it to be permissive but, the evidence already taken, points up the fact that the county was using the road adversely to the defendants.
We have stated some of the facts herein, and while a few we have cited occurred within some two or three years of the erection of obstructions, we have cited them simply to show that the county was still using the roadway. The various acts which show that the plaintiff-county was using the road adversely to the defendants were abundantly testified to by the various witnesses and such things consisted of grading, filling, claying, construction and maintenance of fences, signs where the fences had been were testified to by witnesses, together with use by a school bus. For none of these things was permission sought. There is a complete absence from the record of anything tending to show that the county was using the roadway under a permissive use.
Regardless of whether such right as the county has was based on prescription or was adverse, the facts in themselves, together with the allegations in its complaint, show adverse possession so as to bring the case out of the doctrine that the presumption that the use of the highway was permissive. We find that the rule is quite clear in Zetrouer v. Zetrouer, 1925, 89 Fla. 253, 103 So. 625, 626, where it is said:
“(3) The question then recurs whether the road had a legal existence at the time it was obstructed by defendant. The affidavits amply support the claim of continuous, uninterrupted use of the road by complainant and the public for more than 35 years. Where the common law obtains, 20 years’ continuous and uninterrupted use has always created a prescriptive right as well in the public as private individuals. Such a right once obtained is valid and may be enjoyed to the same extent as if a grant existed, it being the legal intendment that its use was originally founded upon such a right. Town of Lewiston v. Proctor, 27 Ill. 414; City of Chippewa Falls v. Hopkins, 109 Wis. 611, 85 N.W. 553; 1 Elliott on Roads and Streets (3d Ed.) 218; Campton’s Petition, 41 N. H. 197; Prudden v. Lindsley, 29 N.J. Eq. 615; Commonwealth v. Cole, 26 Pa. 187.
“(4) Prescription is a mode of acquiring title to property by immemorial or long-continued enjoyment. It refers to personal usage restricted to the claimant and his ancestors or grantors. The original theory was that the right claimed must have been enjoyed beyond the period of the memory of man, which for a long time in England went back to the time of Richard I. To avoid the necessity of proving such long duration a custom arose of allowing a presumption of a grant on proof of usage for a long term of years, which is now regulated by statute in most states.
“(5) Section 1602, Revised General Statutes of Florida of 1920, provides that all roads established by law or by prescription shall be public roads and under the management of the board of county commissioners. By virtue of this statute our law recognizes prescriptive right, and, there being no other statute affecting the subject-matter, the common-law rule of 20 years continuous and uninterrupted use prevails in our state. 1 Elliott on Roads *306 and Streets (3d Ed.) pp. 218, 219. See Whitsides v. Green, 13 Utah 341, 44 P. 1032, 57 Am.St.Rep. 740, text 744, for exhaustive discussion of the subject of highways by user.
“In this view we are not unmindful of that expressed by some authorities to the effect that, as to highways, the doctrine of prescription has no application. This doctrine, however, seems to be based on the theory that prescription presupposes a grant from the rightful owner, and that the public cannot take title by grant. It may be possible that if superlatively restricted the doctrine of prescription would not apply to highways, but it is a fact that they are created and acquired by the public in ways so nearly resembling the acquirement of title by prescription that we are in line with the decided weight of authority in holding that highways do exist by prescription. Elliott on Roads and Streets, 217, and authorities cited.”
In the case of Downing v. Bird, 100 So.2d 57, 64, a case decided by the Supreme Court of Florida on January 31, 1958, but the opinion not yet being reported, Justice O’Connell has this to say:
“The trend of modern authorities is to abandon the theory that prescriptive rights are based on the presumption of a prior grant, and to treat the acquisition thereof as being rights acquired by methods substantially similar to those by which title is acquired by adverse possession. Bridle Trail Association v. O’Shanick, 1956, Mo.App., 290 S.W.2d 401; Plaza v. Flak, 1951, 7 N.J. 215, 81 A.2d 137, 27 A.L.R.2d 324; 17A Am.Jur. 678, Easements, Sec. 66. We agree with these authorities.
“In either prescription or adverse possession, the right is acquired only by actual, continuous, uninterrupted use by the claimant of the lands of another, for a prescribed period. In addition the use must be adverse under claim of right and must either be with the knowledge of the owner or so open, notorious, and visible that knowledge of the use by and adverse claim of the claimant is imputed to the owner. In both rights the use or possession must be inconsistent with the owner’s use and enjoyment of his lands and must not be a permissive use, for the use must be such that the owner has a right to a legal action to stop it, such as an action for trespass or ejectment.
* * * # * *
“Here may we say that we recognize that in the case of Zetrouer v. Zetrouer, supra, * * * this Court used language indicating that continuous and uninterrupted use of land alone would be sufficient to create a prescriptive right and that it might not be necessary that the use be adverse. However, it is to be noted that in the opinion the Court states that the bill of complaint in that cause alleged that the plaintiffs there had used the road in question ‘continuously, uninterruptedly and adversely * * Nevertheless, insofar as that opinion may be at variance with this and other opinions of this Court, this opinion shall control.”
We cite Downing v. Bird, supra, for the primary purpose of distinguishing that case from the instant case. In that case it will be noted that Justice O’Connell states that:
“ * * * However, it is to be noted that in the opinion the Court states that the bill of complaint in that cause alleged that the plaintiffs there had used the road in question ‘continuously, uninterruptedly and adversely * * *.’ Nevertheless, insofar as that opinion may be at variance with this and other opinions of this Court, this opinion shall control.”
Justice O’Connell makes the allegation “adverse” important in the above citation. *307 However, plaintiff has not used the word “adverse” in its amended complaint in this case, but it has alleged facts, and the evidence supports them, from which the defendants well knew that the county’s use of the roadway was adverse to them and it is on this point that we cite the Downing case and conclude that the plaintiff’s allegations, as well as its proof, are clearly distinguishable.
On the authority of Zetrouer v. Zetrouer, supra, as well as on the authority of Dade County v. Snyder, 1939, 140 Fla. 135, 191 So. 185 and Grove v. Reeder, Fla.1951, 53 So.2d 530, we hold that the evidence on behalf of plaintiff in this case is adequate and that the Chancellor erred in dismissing this bill with prejudice.
Reversed for further proceedings not inconsistent with this opinion.
KANNER, C. J., and ALLEN, J., concur.