## PINCKNEY AND BRUEN v. BURRAGE AND STEPHENS.

1. A certificate of acknowledgment, made after January 1st, 1821, which does not state that the person taking it first made known to the grantor the contents thereof, and was satisfied that he was the grantor mentioned in the deed, will not entitle the deed to be given in evidence without other proof.
2. The act of 1820, directing these things, is compulsory, and not merely directory.
3. The second section of the act of 1787, for the limitation of suits respecting title to lands, does not begin to run against a reversioner or remainderman until after the estate for life is terminated.

---

In ejectment for land in the county of Essex.

This action was tried before HAINES, Justice, at the Essex Circuit, April term, 1862, and a verdict rendered for the plaintiffs. The judge having allowed a rule to show cause why there should not be a new trial, the same was argued before Justices OGDEN, HAINES, and ELMER, by *C. Parker* and *A. O. Zabriskie*, for defendants, and by *T. P. Ranney* and *R. Gilchrist*, for plaintiffs.

The opinion of the court was delivered by

ELMER, J. Three reasons for setting aside the verdict and ordering a new trial, have been insisted on and will be separately considered.

*First.* It is insisted that the judge erred in rejecting a deed, offered in evidence for the defendants, dated May 1st, 1822, from John Bruen to Alexander C. McWhorter, on the ground that the acknowledgment did not set forth that the judge first made known the contents thereof to the

person making such acknowledgment, and was satisfied that he was the grantor mentioned in said deed, as required by the eighth section of the act of 1820, *Rev. Laws* 749, then in force. The argument urged on this point is, that the act of 1799, *Rev. Laws* 458, to which the act of 1820 is a supplement, provides that a deed, acknowledged or proved as then required, should be received in evidence, and as the supplement makes no provision in that respect and contains no negative words, the eighth section of the said supplement must be regarded as merely directory to the officer, and therefore as not requiring the certificate to be in the form there prescribed to make the deed or the record evidence.

In my opinion this construction of the act of 1820 is not tenable; on the contrary, I think the original act and the supplement must be read together, and treated as one act. The rule applicable to the case is, " that if an affirmative statute, which is introductive of a new law, directs a thing to be done in a certain manner, the thing shall not, although there are no negative words, be done in any other manner." 6 *Bac. Abr.* 377. To this general rule there are no doubt exceptions, but none of them reach a case like the one before us. The intention of the legislature would in fact be frustrated if an acknowledgment without the words prescribed should be treated as equally valid with one made correctly.

*Second.* Objection is made to the judge's charge, that the second section of the act of 1787, entitled " an act for the limitation of suits respecting title to lands," *Nix. Dig.* 433,* was no bar to the plaintiffs' recovery.

The plaintiffs set up and depended on a title to an estate in remainder in the disputed premises under the will of Eleazer Bruen, who died in 1821, which first accrued upon the death of the testator's son, Gabriel, in 1850. It was insisted, on behalf of the defendants, that the act in question bars a title in remainder or reversion ; so that a possession of thirty years, which was obtained by a fair *bona fide* purchase of the land of any person in possession, and supposed to have a legal right or title thereto, will give a good title

* *Rev.*, p. 598, § 24.

as against the reversioner or remainderman, if the plaintiff cannot avail himself of the exceptions contained in the proviso. The defendants' possession under such a purchase is claimed to have commenced in 1822, during the life of Gabriel Bruen, the tenant for life.

Such a construction of this act, so far as I am aware, is now for the first time suggested, and is certainly contrary to the impression which has prevailed among the profession. It was held in the case of *Wright* v. *Scott*, 4 *Wash. C. C. R.* 16, that the first section of this act will bar the heir in tail, if the possession was adverse to the ancestor under whom he claimed; and Judge Story put a like construction upon a somewhat similar act in Rhode Island. *Inman* v. *Barnes*, 2 *Gall.* 315. This was in accordance with the decisions in England, it being held there that there is no distinction between the heir of a tenant in tail and the heir of one seized in fee simple. *Cotterell* v. *Dutton*, 4 *Taunt.* 826; *Tolson* v. *Kaye*, 3 *Brod. & Bing.* 217. Chief Justice Kirkpatrick, who was a master of the law of real estate, and has given us a full history of the application in New Jersey of the statutes of limitation to the action of ejectment, and who refers particularly to the act in question, as well as to the act of 1799, *Den* v. *Morris*, 2 *Halst.* 6, certainly held no such opinion. His language is, *page* 18, "and it will be admitted, too, that the possession of the tenant for life, even though the estate for life should pass into twenty hands successively, is still the possession of the reversioner; so that he who enters or holds over against such reversion, or after the termination of the life estate, so far from being able to justify himself under an adverse possession, is directly guilty of that species of ouster called in our books an intrusion, and may be immediately dispossessed by the mere entry of the reversioner or remainderman."

The principle upon which statutes of limitation are justified is, that it is for the interest of society to require persons having claims to prosecute them within a reasonable period. To bar and preclude those who have no right to prosecute

would in most cases be unjust. It was held, in the case of *Murray* v. *East Ind. Co.*, 5 *Barn. & Ald.* 204, that the statute did not begin to run until there was an administrator capable of suing. The possession that will bar a right of entry has always been held to be a strictly adverse possession, that is to say, adverse to some claimant who had a present right of entry. When the English statutes of limitation were. revised and consolidated, 3 and 4 *W. IV.*, *ch.* 27, it was expressly provided, that when an estate or interest claimed shall have been an estate or interest in reversion or remainder, or other future interest or estate, such right shall be deemed to have first accrued at the time which such estate or interest became an estate or interest in possession. So long as estates in remainder or reversion are permitted to exist, they must be protected by allowing a claimant a reasonable time after his right accrues to commence his action.

What effect a possession of sixty years may have by virtue of the first section of the act, it is not necessary now to inquire. The broad and comprehensive language of it may possibly justify its application even to the cases of reversioners and remaindermen. In the case of *Widdowson* v. *Earl of Harrington*, 1 *Jac. & Walk.* 512, Sir Thomas Plumer, master of the rolls, held that section 2 of 32 *Henry VIII.* required the fifty years allowed for bringing a writ of right, to be reckoned from the date of the adverse seizin and not from the death of the tenant for life. The language of Sir W. Blackstone, 3 *Com.* 196, is, "that the possession of lands in fee simple, uninterruptedly, for three-score years, is at present a sufficient title against all the world, and cannot be impeached by any dormant claim whatever," and although, as is noticed by Christian and others, this language was too broad, *Sudgen on Vend.* 270, remarking that he certainly did not mean that the lawful possession of a tenant for life would operate as a bar to the reversioner, but he alluded to a clear adverse possession. Still it may be that this statute was framed with the intent to produce the effect Blackstone, at that time the great authority in New Jersey, had stated the English statutes had.

However this section may be construed, a little attention to the very different language used in the second section will free the question now under consideration from any real difficulty. The first section declares, in broad terms, that sixty years' actual possession shall vest a full and complete title, and bar all claims that may be made or actions commenced by any person whatever. The second section enacts, that thirty years' possession, commenced in a specified manner, shall be a good and sufficient bar to all prior locations, rights, titles, conveyances, or claims, not followed by actual possession, and shall vest an absolute right and title in the actual possessor. Now the right and title of a reversioner or remainderman, in cases where the possession set up as an adverse right has commenced during the existence of the estate for life, is not a prior right or title, for the right and title of such a claimant does not accrue until the death of the tenant for life. That this is the meaning is rendered plain by the proviso, which declares, that if any person having a right or title to lands, shall, at the time said right or title first descended or accrued, be within the age of twenty-one years, &c., then such person or his heirs, may, notwithstanding the aforesaid times are expired, be entitled to his action, so that he commence the same within five years after his full age, &c. This language is equivalent to that used in the act 21 *Jac. I.*, *ch.* 16, where it is " first descended or fallen ;" substantially re-enacted in our act of 1799, and now contained in the revision of 1846, *Nix. Dig.* 436,* which has only the word accrue, and which has always been held, as counsel admit and as numerous cases show, to prevent the statute from running against a remainderman or reversioner. Upon the construction now contended for, it would follow that when a possession, commenced in the manner designated, had continued for thirty years, during the life of a tenant for life, if it happened that the person who upon his death became entitled to the remainder or reversion was within the age of twenty-one, he might commence his action forthwith or at any time within five years; but if he happened to be under

---

* *Repealed.*

no disability, he could not sue at all, but would be forever barred, and the title would be complete in the possessor.

This act of 1787 * is entitled " an act for the limitation of suits respecting titles to lands," and must be interpreted to harmonize with the provisions of other acts for the same purpose.

It seems to have been the first fruits of the exemption of our people by the Revolution, from the paramount influence of the boards of proprietors, and for a long time was of considerable importance.    But since the case of *Clark* v. *Richards*, 3 *Green* 347, and subsequent decisions have established the doctrine, contrary to the general impression of the bar and to the seeming import of the language of the act of 1799, that the limitation of twenty years, established by that act, is to be computed from the time when the plaintiff or those under whom he claimed were first of age, &c., and that any subsequent disability is not to be deducted, as was always the construction given to the act of 21 *Jac. I., ch.* 16, it has ceased to be of much practical importance.    In my opinion the charge was right.

*Third.* It is urged that the verdict of the jury was against the weight of evidence.

Without intimating any opinion as to the weight of the evidence, I think the case is of such a nature as to render it proper that the decision of the questions of fact involved should be submitted to another jury.    The judgment in ejectment is now final and conclusive.    The case turns upon what land was meant to be described in certain devises made more than forty years ago, at a time when property now laid out into streets and squares and improved, was designated as swamp lots, used for digging turf, and is of considerable value. The evidence laid before us is confused and contradictory.

Let the rule for setting aside the verdict and ordering a new trial be made absolute, upon the terms that the defendants pay the costs of the trial that has been had.

. Rule made absolute.

* *Rev., p.* 598.