766 A.2d 1110

J & M LAND COMPANY, PLAINTIFF-APPELLANT, v. FIRST UN-ION NATIONAL BANK, TRUSTEE UNDER DEEDS OF TRUST FOR THE BENEFIT OF DAVID S. SHEPARD AND JEAN S. MEYER, DEFENDANT AND THIRD PARTY PLAINTIFF-RE-SPONDENT, v. R.C. MAXWELL COMPANY, THIRD PARTY DE-FENDANT.

Argued October 10, 2000—Decided February 27, 2001.

494

496

Richard O. Venino argued the cause for appellant.

*Richard O. Venino* argued the cause for appellant.

*John A. Ridgway* argued the cause for respondent (*Ridgway & Ridgway*, attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

This is an adverse possession case in which the Court must determine which of several statutes of limitations governs the claim. More broadly, this appeal requires us to reconcile the meaning of *N.J.S.A.* 2A:14–6 and –7 with *N.J.S.A.* 2A:14–30 and *N.J.S.A.* 2A:14–31 and to reconcile *N.J.S.A.* 2A:14–6 and –7 with *N.J.S.A.* 2A:35–1. We hold that title does not vest in an adverse

possessor until the passage of thirty or sixty years and that neither the adverse possessor nor the owner of record determines which statute controls.

## I.

First Union National Bank (First Union) owns a large tract of marshland in Egg Harbor Township, New Jersey, consisting of approximately 550 feet of frontage along Northfield–Margate Boulevard. J & M Land Company (J & M) owns an adjoining tract of land consisting of approximately 300 feet of frontage along the Boulevard. In 1956, J & M's predecessor in title, William Bater, leased three sites to R.C. Maxwell Company (Maxwell) for the purpose of erecting and maintaining billboards. Unknown to J & M, Maxwell or First Union, one of the three sites was located on First Union's property.

Shortly after obtaining the lease, Maxwell unknowingly erected two billboards on First Union's property in 1956, one facing eastbound traffic and the other facing westbound traffic. The two billboards have continued to be located on First Union's property, and Maxwell has paid rent to J & M and its predecessors since 1956. First Union, meanwhile, has paid all taxes on the property. Each billboard is illuminated by electric lights. Maxwell maintains the two billboards and the land immediately adjoining them. Except for the billboards, the remainder of the First Union and J & M properties is uncultivated marshland.

In 1996, Egg Harbor's tax assessor increased First Union's tax assessment based on the presence of billboards on its property. Before receiving notification of that tax increase, First Union did not know the billboards were located on its property. A land survey disclosed that the two billboards are located on First Union's property 200 feet from the boundary line between the First Union and J & M properties. First Union demanded that J & M turn over the rents it had received from Maxwell for the billboards. J & M responded to the demand for an accounting with the present litigation.

In its complaint, J & M sought a declaratory judgment that it had acquired a "prescriptive easement" over the area where the billboards are located and the adjacent land used for maintenance. Alternatively, J & M sought title by adverse possession to those areas. First Union counterclaimed for a declaration that J & M has no legal interest in the property and for an accounting for all rents received from Maxwell.

Both parties moved for summary judgment. The trial court concluded that the legal requirements for a prescriptive easement are the same as those to obtain title by adverse possession, relying on *Mannillo v. Gorski*, 54 *N.J.* 378, 386, 255 *A.*2d 258 (1969), and *Baker v. Normanoch Ass'n, Inc.*, 25 *N.J.* 407, 419, 136 *A.*2d 645 (1957). Thus the trial court examined the undisputed evidence and the controlling law and determined that J & M had not established its claim and that First Union had clear title to the property. The trial court made two findings: (1) J & M's adverse possession claim was governed by the sixty-year limitations period for adverse possession claims to "uncultivated tracts," and therefore J & M did not have title because the duration of its possession had been only thirty-nine years; and (2) J & M's possession was not "notorious" because the boundary line between the two properties was not visible to the naked eye. After rejecting all of J & M's claims, the trial court held that First Union was entitled to rents only for the period subsequent to its demand letter to J & M.

Both parties appealed. J & M appealed the court's rejection of its adverse possession claim, arguing that it was entitled to title or a prescriptive easement after twenty years based on *N.J.S.A.* 2A:14–6. First Union appealed from the limitation of its damages to rents subsequent to the demand letter. The Appellate Division in a published opinion affirmed the trial court's application of the sixty-year statute, thus "rejecting J & M's claim to the part of First Union's tract on which the billboards are located." *J & M Land Co. v. First Union Nat'l Bank*, 326 *N.J.Super.* 591, 595–96, 742 *A.*2d 583 (App.Div.1999). The court stated that "[t]he applica-

ble limitations period ... is 'a question of substantive law' which is controlled by the factual basis of the adverse possession claim." *J & M, supra,* 326 *N.J.Super.* at 596–97, 742 *A.*2d 583 (quoting *Braue v. Fleck,* 23 *N.J.* 1, 18, 127 *A.*2d 1 (1956)).

The Appellate Division rejected J & M's claim that its use of the disputed land qualified as a prescriptive easement after twenty years. The court determined that J & M's use of First Union's land was possessory rather than a limited use or enjoyment of the land, as is the case with easements. Based on its conclusion that J & M's claim was governed by the sixty-year adverse possession statute, the Appellate Division declined to address the trial court's alternative holding that J & M's possession was not notorious. We granted J & M's petition for certification. 163 *N.J.* 395, 749 *A.*2d 369 (2000).

## II.

J & M contends that in an adverse possession action the party asserting the rights of an adverse possessor, not the owner of record, has the right to choose which statute of limitations controls. First Union, on the other hand, asserts that the owner of record who is defending against the adverse possession claim is the party entitled to choose which statute of limitations controls. Neither party contends that the time period required for vesting title based on adverse possession should be different for a prescriptive easement.

Resolution of what sounds like a simple proposition requires a highly complex analysis. We begin with the four statutes of limitations referenced by the parties. *N.J.S.A.* 2A:14–6 provides "[e]very person having any right or title of entry into real estate shall make such entry within 20 years next after the accrual of such right or title of entry, or be barred therefrom thereafter." *N.J.S.A.* 2A:14–7 provides "[e]very action at law for real estate shall be commenced within 20 years next after the right or title thereto, or cause of such action shall have accrued." Although the plain language of neither of those two statutes specifically estab-

lishes title in the adverse possessor after twenty years of adverse possession, they have been construed "to mean that a possession adverse for 20 years gives a title by adverse possession—an actual title as distinguished from a mere right of entry." *Braue, supra,* 23 *N.J.* at 9, 127 *A.*2d 1. J & M maintains it is entitled to a judgment for adverse possession based on the twenty-year statutes.

The two other pertinent statutes provide:

*N.J.S.A.* 2A:14–30:

> Thirty years' actual possession of any real estate excepting woodlands or uncultivated tracts, and 60 years' actual possession of woodlands or uncultivated tracts, uninterruptedly continued by occupancy, descent, conveyance or otherwise, shall, in whatever way or manner such possession might have commenced or have been continued, vest a full and complete right and title in every actual possessor or occupier of such real estate, woodlands or uncultivated tracts, and shall be a good and sufficient bar to all claims that may be made or actions commenced by any person whatsoever for the recovery of any such real estate, woodlands or uncultivated tracts.

*N.J.S.A.* 2A:14–31:

> Thirty years' actual possession of any real estate, ... wherever such possession commenced or is founded upon a proprietary right duly laid thereon, and recorded ... pursuant to law, or wherever such possession was obtained by a fair bona fide purchase of such real estate from any person in possession thereof and supposed to have a legal right and title thereto ... shall vest an absolute right and title in the actual possessor and occupier of all such real estate.

■ Adverse possession for either thirty or sixty years under those two statutes "establish[es] a full and complete title in the occupier of the land." *Braue, supra,* 23 *N.J.* at 9, 127 *A.*2d 1. First Union contends that because J & M has been in possession of uncultivated land for less than sixty years, J & M is not entitled to a judgment.

### III.

#### A.

Our ultimate determination of which statute of limitations applies to this case requires us to begin with the consanguinity of our adverse possession statutory history. The common law did

not recognize a transference of title through adverse possession. "Such seemed to be oppugnant to one of the most fundamental axioms of the law." *Predham v. Holfester*, 32 *N.J.Super.* 419, 421, 108 *A.*2d 458 (App.Div.1954). "For true it is, that neither fraud nor might can make a title where there wanteth right." *Ibid.* (quoting *Altham's Case*, 8 *Coke Rep.* 150b, 153b, 77 *Eng. Rep.* 701, 707 (1610)). Under the English common law:

> Before 1237 claimants had been required to prove seisin on the day in 1135 when King Henry I died; then they were restricted to the day in 1154 when Henry II was crowned; in 1275 the boundary was moved forward to the coronation of Richard I in 1189 and there it remained for many years. Indeed, the length of the period progressively enlarged until in 1541 a claimant might be obliged to establish an adverse holding for over 300 years in order conclusively to sustain his title.
>
> [*Predham, supra*, 32 *N.J.Super.* at 422, 108 *A.*2d 458.]

During the reign of Henry the Eighth, a comprehensive course was taken by statute, 32 *Hen. VIII, c.* 2,

> which inaugurated the policy of designating a definite period of years counting backward from the time of the litigation. It fixed 60 years as the period in real actions, but the statute did not apply to the increasing number of ejectment actions, and that circumstance, *inter alia*, doubtless motivated the enactment of the statute of limitations, 21 *Jas.* I, *ch.* 16 (1623), which forbade entry on land by one against whom it had been adversely held for 20 years or more.
>
> [*Predham, supra*, 32 *N.J.Super.* at 422, 108 *A.*2d 458.]

The province of New Jersey was created in 1664 by a grant of "Charles II to James, Duke of New York." *Toth v. Bigelow*, 1 *N.J.* 399, 404, 64 *A.*2d 62 (1949). The English statute of 21 *Jam.* 1, *c.* 16 "was declared in force in the province of New Jersey in 1728." *O'Connor v. Altus*, 67 *N.J.* 106, 131, 335 *A.*2d 545 (1975) (Pashman, J., concurring and dissenting). The New Jersey Constitution of 1776 provided that "the common law of England, as well as so much of the statute law, as have been heretofore practiced in this colony, shall still remain in force, until they shall be altered by a future law of the legislature." *N.J. Const. of 1776* art. XXII.

In England, "[t]he sole historical basis of title by adverse possession [was] the development of statutes of limitation on actions for the recovery of land ... [for example,] the ancient writ of right, the possessory assizes and writs of entry and the modern

action of ejectment which displaced the earlier actions." Rufford G. Patton, *Title by Adverse Possession, in* 3 *American Law of Property* § 15.1, at 755 (A. James Casner ed., 1952). In 1623, the Statute of Limitations, 21 *Jam.* 1, ch. 16, provided:

> For quieting of men's estates, and avoiding of suits, be it enacted (2) that stated actions for the recovery of lands shall be sued and taken within twenty years next after the title and cause of action first descended or fallen, and at no time after the said twenty years; . . . (4) and that no person or persons shall at any time hereafter make any entry into any lands, tenements, or hereditaments, but within twenty years next after his or their right or title which shall hereafter first descend or accrue to the same; and in default thereof, such persons so not entering, and their heirs, shall be utterly excluded and disabled from such entry after to be made.

> [*Id.* § 15.1, at 756.]

That statute's "effect was to bar ejectment after twenty years by barring the right of entry on which the plaintiff's right to maintain ejectment depended." *Ibid.*

That statute was repealed by the Real Property Limitation Act of 1833, 3 & 4 *Wm.* 4, *c.* 27, which "provided for a direct limitation on the action of ejectment and created one period of limitation for both rights of entry and of action (sec.2). It abolished the old real actions (sec.36) *and expressly provided that the right and title of the former owner should be extinguished by the running of the twenty year period of limitation* (sec.34)." Patton, *supra,* § 15.1, at 757 n. 6 (emphasis added). Patton remarks that in every state "the law is equally settled that the effect of the operation of the statute is to extinguish the former owner's title so as to eliminate not only ejectment but each and every other remedy at law or in equity by which his title might be enforced." *Ibid.* The Act of 1833, however, never became effective in New Jersey because of earlier legislation that had occupied the field.

As early as 1787, New Jersey had enacted two adverse posses-sion statutes specifying that title would not vest before passage of thirty or sixty years of uninterrupted possession.

> That [s]ixty Years actual Po[ss]e[ss]ion of any Lands, Tenements or other Real E[s]tate, uninterruptedly continued by Occupancy, De[s]cent, Conveyance or other-wi[s]e, in whatever Way or Manner [s]uch Po[ss]e[ss]ion might have commenced, or have been continued, [s]hall ve[s]t a full and complete Right and Title in every

actual Po[ss]e[ss]or or Occupier of [s]uch Lands, Tenements or other Real E[s]tate, and [s]hall be a good and [s]ufficient Bar to all Claims that may be made, or Actions commenced by any Per[s]on or Per[s]ons whatever, for the Recovery of any [s]uch Lands, Tenements or other Real E[s]tate.

[An Act for the Limitation of Suits Respecting Titles to Land, c. CCI, 1787 Acts of the General Assembly 410.]

### Section 2 of the 1787 act provides, in part:

That thirty Years actual Po[ss]e[ss]ion of any Lands, Tenements or other Real E[s]tate, uninterruptedly continued as aforesaid, where ever [s]uch Po[ss]e[ss]ion commenced, or is founded upon a Proprietary Right duly laid thereon, and recorded in the Surveyor General's Office of the Divi[s]ion in which [s]uch Location was made, or in the Secretary's Office agreeably to Law, or where-ever [s]uch Po[ss]e[ss]ion was obtained by a fair bona fide Purcha[s]e of [s]uch Lands, Tenements or other Real E[s]tate of any Per[s]on or Per[s]ons whatever in Po[ss]e[ss]ion, and [s]uppo[s]ed to have a legal Right and Title thereto, or of the Agent or Agents of [s]uch Per[s]on or Per[s]ons, [s]hall be a good and [s]ufficient Bar to all prior Locations, Rights, Titles, Conveyances or Claims whatever, not followed by actual Po[ss]e[ss]ion.

*[Ibid.]*

At common law the right of a landowner to reenter and retake possession was not restricted by time limits and was different from an ejectment action. Under that right of entry, "the lawful owner might, at all times, restore himself by entering upon the wrongdoer, in a peaceable manner, and turning him out, [but if he did not succeed, he] must have recourse to his [ejectment] action at law." *Den ex dem. Johnson v. Morris,* 7 *N.J.L.* 6, 8 (Sup.Ct. 1822). The historical difference between a right of entry action and an ejectment action was that the ejectment was based on a breach of a lease to realty. When the burden of proof evolved to become one and the same for each cause of action, the distinction disappeared. *Id.* at 9–10. As society evolved and it became unclear whether there were any time constraints on when an owner had to retake possession, it became necessary to require people to assert claims to retake possession within a reasonable time. To implement that policy shift from the common law, the act of 1799 was passed. Section 9 of that act provided, in part:

That no per[s]on who now hath or hereafter may have any right or title of entry into any lands, tenements or hereditaments, [s]hall make any entry therein, but within twenty years next after [s]uch right or title [s]hall accrue; and [s]uch per[s]on [s]hall be barred from any entry afterwards....

[An Act for the Limitation of Actions, c. DCCLXIV, 1799 Acts of the General Assembly 457.]

## Section 10 of the act of 1799 provided, in part:

That from and after the fir[s]t day of January, which will be in the year of our Lord, one thou[s]and eight hundred and three [1803], every real, po[ss]e[ss]ory, ance[s]trel, mixed or other action, for any lands, tenements or hereditaments, [s]hall be brought or in[s]tituted within twenty years next after the right or title thereto or cau[s]e of [s]uch action [s]hall accrue, and not after. . . .

[*Id.* at 458.]

After the twenty-year right of entry statute of limitations became effective in 1803, an owner of record could not wait more than twenty years before seeking judicial assistance to regain possession.

The act of 1799 did not contain a clause repealing portions of prior acts that were inconsistent with it. An Act for the Limitation of Actions, c. DCCLXIV, 1799 Acts of the General Assembly 456–60; *Spottiswoode v. Morris & Essex R.R. Co.*, 61 *N.J.L.* 322, 330, 40 *A.* 505 (Sup.Ct.1898), *aff'd o.b.*, 63 *N.J.L.* 667, 44 *A.* 1100 (E. & A. 1899) ("But what strongly shows that the act of 1787 has never been considered by the legislature, any more than by the profession, as being repealed by the act of 1799 is that in all the revisals of the laws the two acts have been incorporated."); *Den ex dem. Clark v. Richards*, 15 *N.J.L.* 347, 361 (Sup.Ct.1836) (noting that in *Den ex dem. West v. Pine*, 4 *Wash. Cr. C.R.* 691, Judge Washington concluded that "the act of 1787 was not repealed by that of 1799"). Tension between the act of 1787 and the act of 1799 arose because the act of 1799 barred a landowner's judicial remedy to recover possession from a trespasser after twenty years but was silent regarding the rights and obligations of the respective parties after twenty years. That tension has never been clearly resolved. Instead, courts have either ignored the thirty/sixty-year statutes or the twenty-year statutes while applying the other, or stated that the two sets of statutes are not in conflict. No decision to date has sufficiently reconciled the two sets of statutes by giving meaning to both.

Although New Jersey recognized a common law cause of action for ejectment that predated the act of 1787, statutory procedures were established in 1855 governing judicial processing of ejectment actions. *L.* 1855, *c.* 116, p. 288. That act was amended by the Laws of 1877, p. 326. The act of 1877 permitted a landowner who prevailed in his or her claim for possession in an ejectment action to recover mesne profits and damages from the wrongful possessor. Both the act of 1855 and the amendatory act of 1877 were known as "an Act concerning the action of ejectment." *P.L.* 1855, p. 22; *Rev.* 1877, p. 326. Those acts were codified as *R.S.* 2:51–1 *et. seq.*

Then, in 1922, the sixty-year statute was amended to read:

1. Thirty years' actual possession of any lands, tenements, or other real estate, excepting woodlands or uncultivated tracts and that sixty years' actual possession of any of woodlands or uncultivated tracts, uninterruptedly continued by occupancy, descent, conveyance or otherwise, in whatever way or manner such possession might have commenced, or have been continued, shall vest a full and complete right and title in every actual possessor or occupier of such lands, tenements, or other real estate, and shall be a good and sufficient bar to all claims that may be made, or actions commenced by any person or persons whatsoever, for the recovery of any such lands, tenements, or other real estate. '

2. All acts and parts of acts inconsistent with this act are hereby repealed.

3. This act shall take effect immediately.

[*L.* 1922, *c.* 188, §§ 1–3.]

Broadly speaking, our adverse possession statutes were last revised in 1951 to create our present *N.J.S.A.* 2A:14–6 and –7, and *N.J.S.A.* 2A:14–30 and –31. *N.J.S.A.* 2A:14–6 and –7 may be categorized as the right of entry/action for real estate. The second classification contains the more specific adverse possession statutes codified at *N.J.S.A.* 2A:14–30 and –31.

The procedural and substantive provisions of the acts of 1855 and 1877 regarding successful ejectment actions were amended again in 1948. *L.* 1948, *c.* 373. Significantly, that amendment was entitled "An Act concerning civil actions for possession of land, superseding actions of ejectment." *Ibid.* Two years later, the Legislature appointed an Advisory Committee on the Revision of Statutes, *L.* 1950, *c.* 171, in June 1950 to revise Title 2 of the

Revised Statutes to, among other things, delete procedural matters from the statutes. *State v. Otis Elevator Co.*, 12 *N.J* . 1, 18, 95 *A.*2d 715 (1953). The Legislature on December 5, 1951, adopted the procedural changes to *R.S.* 2:51–1 *et. seq.* that were recommended by the Advisory Committee. *Ibid.; L.* 1951, *cc.* 344, 345. Thereafter, what had been the ejectment act of 1855 and 1877, and the 1948 act that superceded actions for ejectment, became *N.J.S.A.* 2A:35–1 to –3. Since 1948, "[a]ny person claiming the right of possession of real property in the possession of another, or claiming title to such real property, shall be entitled to have his rights determined in an action in the [county or] superior court." *N.J.S.A.* 2A:35–1. When a landowner establishes his or her entitlement to possession of or title to the realty, he or she as "the plaintiff shall be entitled to recover from the defendant any and all incidental damages, including mesne profits, and the full value of the use and occupation of the premises for the time, not exceeding 6 years, before the commencement of the action, during which the defendant was in possession thereof." *N.J.S.A.* 2A:35–2. Finally, "[w]here permanent improvements have been made on the premises in good faith, under circumstances entitling the defendant to have the value thereof allowed to him, the court may allow the same to be set off against the damages of the plaintiff, but only to the extent of such damages." *N.J.S.A.* 2A:35–3. Here, First Union successfully asserted in its counterclaim its title and right to possession of the disputed lands and was granted relief pursuant to *N.J.S.A.* 2A:35–1 and –2.

## B.

Our decisional law has created tension between *N.J.S.A.* 2A:14–6 and –7 on the one hand, and *N.J.S.A.* 2A:14–30 and –31 on the other hand. *N.J.S.A.* 2A:14–6 and –7 bar a landowner's right of entry or action for real estate if those actions are not brought within twenty years of the accrual of such right, title of entry, or cause of action. The plain language of *N.J.S.A.* 2A:14–6 and –7 only informs us that the landowner may no longer assert a right of

entry or an action for real estate but does not address the status of the landowner's title or right to possession between expiration of the twenty-year limitations period and satisfaction of the thirty- or sixty-year adverse possession period. In contrast, *N.J.S.A.* 2A:14–30 and –31 expressly state that an adverse possessor's title to land vests either after thirty years or sixty years, depending on the character of land at issue and the way in which the adverse possession began. The determination of which statute controls in this case is critical because, unless title vests in J & M after twenty years, its thirty-nine years of possession cannot satisfy the sixty-year statute of limitations applicable to the uncultivated land involved here.

Generally, the past trend in the cases has been to state that title vests after twenty years of adverse possession. Some cases have faithfully applied the thirty/sixty-year adverse possession statutes or at least indicated that title would not vest until the thirty/sixty- year time limit had been met. An overview of a chronological examination of New Jersey's adverse possession cases reveals that cases pre-dating the act of 1799 held that twenty years of adverse possession did *not* vest title in an adverse possessor. Despite the fact that our twenty-year statutes have never expressly vested title in adverse possessors, and despite the existence of our thirty/sixty-year statutes, after 1799 courts began to vest title in adverse possessors who had shown uninterrupted possession for at least twenty years, often ignoring the thirty/sixty-year adverse possession statutes. Some cases, however, persisted in applying the thirty/sixty-year rule established by the act of 1787.

The first reported decision of significance was decided in 1794 by the former Supreme Court under Chief Justice Kinsey. In that case, the defendant/adverse possessor argued that the plain- tiff/title owner had to prove his legal title because the defendant had shown twenty years of adverse possession. *Den ex dem. Bickham v. Pissant & Lardner*, 1 *N.J.L.* 220, 221 (Sup.Ct.1794). The plaintiff/title owner argued that he showed that he had legal

title and that nothing would invalidate his rights except sixty years of adverse possession. *Ibid.* The court found:

> The defendant has yet offered no title, nor can we at this period presume that he has any. All that has yet been alleged in favor of his right is an adverse possession of upwards of twenty years, which it is contended tolls the right of entry of the lessor, so that he cannot recover in an action of ejectment, which is a mere possessory action.
>
> [*Id.* at 222.]

The court rejected defendant's claim to title by adverse possession, explaining:

> In New Jersey, the action of ejectment has always been considered as on the same footing with a writ of right. It has been too solemnly settled to be now disputed, that the statute of *James,* (*Stat.* 21 *Jac.* I., *c.* 16; 3 *Ruffhead* 100,) does not extend here; and, therefore, all the legal consequences arising from that statute, one of which is, that twenty years' adverse possession, like a descent cast, tolls an entry, fall to the ground. This objection, therefore, cannot be supported.
>
> [*Id.* at 222–23.]

It should be noted that *Bickham* was decided seven years after the thirty/sixty-year statutes were enacted, and five years before the Legislature passed the twenty-year statutes as part of the act of 1799. According to *Bickham,* prior to passage of the act of 1799, an action for ejectment could be brought more than 20 years after an adverse possession began. Thus, the thirty/sixty-year statutes would have been the only authority for granting title by adverse possession in New Jersey, at least prior to passage of the act of 1799. Five years after *Bickham* was decided, the New Jersey Legislature passed the twenty-year statutes as part of the act of 1799. The thirty/sixty-year statutes were neither repealed nor amended.

At least one court specifically discussed the difference in choice of language between England's twenty-year statute, 21 *Jam.* 1, *c.* 16, § 2, and New Jersey's twenty year statutes under the act of 1799. *Den ex dem. Clark v. Richards,* 15 *N.J.L.* 347, 354 (Sup.Ct. 1836). The *Clark* case focused on the differing language concerning statutory disabilities; Chief Justice Hornblower noted, however, that although the existing law did not vest title in an adverse possessor after twenty years, the law should be changed by the Legislature to achieve that result. *Id.* at 360–61. Thus, as of

1836 when *Clark* was decided, the twenty-year statutes did not vest title in the adverse possessor.

*Pinckney v. Burrage*, 31 *N.J.L.* 21, 24 (Sup.Ct.1864), held that the thirty- and sixty-year statutes of limitations are dispositive of when title vests through adverse possession. *Id.* at 25. The court also noted that the "act of 1787 is entitled 'an act for the limitation of suits respecting titles to lands,' and must be interpreted to harmonize with the provisions of other acts for the same purpose." *Id.* at 26 (footnote omitted). That opinion cited with approval Sir William Blackstone's treatise as authoritative on New Jersey's adverse possession law. He explains that "'the possession of lands in fee simple, uninterruptedly, for three-score years, is at present a sufficient title against all the world, and cannot be impeached by any dormant claim whatever.'" *Pinckney, supra,* 31 *N.J.L.* at 24 (quoting W. Blackstone, 3 *Commentaries* 196).

Two years later, the Supreme Court of the United States, in a writ of error to the Circuit Court of the United States for the District of New Jersey, applied the thirty-year statutory adverse possession period for color of title from our act of 1787, and found that title vested through adverse possession because the defendant satisfied the conditions of the statute for more than thirty years. *Croxall v. Shererd,* 72 *U.S.* (5 Wall.) 268, 286–87, 18 *L.Ed.* 572 (1866).

Thirteen years later in 1879, a lawyer arguing a case involving the distinction between adverse possession and adverse use of an easement, asserted that "[n]obody pretends that twenty years adverse possession passes the title. Its effect is only, under the statute, to bar the remedy." *Lehigh Valley R.R. Co. v. McFarlan,* 31 *N.J. Eq.* 706, 717 (E. & A. 1879). Although that statement is of no precedential value, it is nonetheless consistent with our holding today.

More than fifty years later, courts were still using the thirty/sixty-year statutes. As noted, in 1922, the sixty-year statute was amended to reduce the required number of years of adverse possession to thirty years for all property other than woodlands or

uncultivated tracts. That amendment was by "An act for the limitation of suits respecting titles to land." *L.* 1922, *c.* 188, § 1. The required period for woodlands and uncultivated lands remained at sixty years. *Ibid.* At the time the bill to amend that statute was introduced, it was noted that "[t]his bill changes from sixty to thirty years the time for the limitation of suits respecting titles to land." Statement to Assembly Bill No. 362 (Feb. 7, 1922).

That amendment is significant to the issue under consideration for two primary reasons. First, it demonstrates that the Legislature did not think the act of 1799 had repealed the act of 1787. More importantly, it shows that the Legislature did not intend to vest title in the adverse possessor after twenty years despite the opportunity to have done so. That the Legislature instead chose to vest title by adverse possession after thirty years is strong evidence that it rejected prior assertions that title by adverse possession could vest after twenty years. Second, the Legislature included the following language in the 1922 amended version of the sixty-year statute: "All acts and parts of acts inconsistent with this act are hereby repealed." *L.* 1922, *c.* 188, § 2. As applied, that language indicates that any statute that vests title in an adverse possessor after fewer than thirty years is inconsistent with the 1922 amendment and is therefore repealed. Thus, that language demonstrates a clear legislative intent not to allow a vesting of title after only twenty years of adverse possession.

Not long after the 1922 amendment became effective, New Jersey's then highest court addressed the issue of title by adverse possession, making clear that the thirty- and sixty-year statutes were to be applied in assessing whether title to land had vested through adverse possession. *O'Brien v. Bilow*, 121 *N.J.L.* 576, 577–78, 3 *A.*2d 641 (E. & A.1939). The plaintiff in that case brought an ejectment action to recover possession of land for which she claimed a right by a chain of over thirty years of "actual, open, notorious, hostile and adverse possession." *Id.* at 577, 3 *A.*2d 641. The defendant argued that the plaintiff's title could not vest in less than sixty years because the 1922 amend-

ment "could not accelerate the time within which a person would be entitled to claim title by adverse possession if part of the time relied upon preceded the passage of the [1922] act." *Id.* at 578, 3 *A.*2d 641. The court disagreed, finding that "plaintiff's adverse possession commenced in 1897 and therefore matured in 1927, or five years after the enactment of the [1922] statute in question." *Ibid.* The court explained that the application of the newly amended statute was valid "where, as here, the parties interested had a reasonable time after its passage to enforce any rights they might have." *Ibid.*

A Court of Chancery two years earlier also applied the 1922 thirty-year statute, and concluded that whether a party's possession has vested title involves an examination of both the character of the possession and whether the possession has met the elements of adverse possession. *See Content v. Dalton,* 121 *N.J. Eq.* 391, 396–405, 190 *A.* 328(Ch.), *aff'd,* 122 *N.J. Eq.* 425, 194 *A.* 286 (E. & A.1937). In the context of a discussion regarding whether possession under the thirty/sixty-year statutes needs to be adverse at all, the court stated that the thirty- and sixty-year statutes are classified under the heading "Title to land by adverse possession," whereas the twenty-year statutes are not. *Id.* at 403–04, 190 *A.* 328. The court noted that such designation is "a plain indication that the compiler of the statutes, at least, considered that the possession required under those acts must be adverse." *Id.* at 404, 190 *A.* 328. In contrast, it might be inferred that the fact that the twenty-year statutes were not listed under that heading means that the compiler of the statutes, at least, did not think that the twenty-year statutes could vest title by adverse possession. In the current statutory compilation, the thirty- and sixty-year statutes remain in the adverse possession article, while the twenty-year statutes are listed with the other statutes of limitations for various civil actions.

The Tax Court has used the thirty/sixty-year statutes to decide whether an adverse possessor should pay realty taxes on land. The court concluded that because the Paper Mill Playhouse had

occupied a parcel of land "in an adverse and notorious manner for over thirty years," title had vested under *N.J.S.A.* 2A:14–30, and, therefore, the Paper Mill Playhouse owned the property in question for tax purposes. *Paper Mill Playhouse v. Township of Millburn,* 7 *N.J. Tax* 78, 87–88 (Tax 1984). In addition, a panel of the Appellate Division recently used the thirty-year statute of limitations to determine whether a claim for adverse possession had been satisfied. *Stump v. Whibco,* 314 *N.J.Super.* 560, 582, 715 A.2d 1006 (App.Div.1998). Similarly, a New Jersey Federal District Court case also applied the thirty/sixty-year statutes, holding that "the applicable statute provides for a sixty-year period for woodlands and uncultivated tracts. The statute therefore gives protection to the owners of such land for a sixty-year period." *Briehler v. American Continental Properties of New Jersey, Inc.,* 1990 *WL* 33144 at *3 (D.N.J.1990).

The continued vitality of the thirty/sixty-year statutes has not gone unnoticed by commentators either. For example, the appendix to a recent law review article listed the adverse possession statutes of all fifty states, and referenced only *N.J.S.A.* 2A:14–30 and –31 as New Jersey's adverse possession statutes. William G. Ackerman & Shane T. Johnson, Comment, *Outlaws of the Past: A Western Perspective on Prescription and Adverse Possession,* 31 *Land & Water L.Rev.* 79, 112 (1996).

### C.

We now focus on the cases holding that the twenty-year statutes vest title. As noted, the cases do not uniformly agree on whether the twenty-year statutes vest title. The theory underlying those cases holding that title vests in the adverse possessor after twenty years is that "[t]he law does not recognize a title which it will not protect." Patton, *supra,* § 15.2, at 760. Thus, the reasoning is that once the statute of limitations has run on a title owner's right of entry or right to action for real estate, the adverse possessor's "title originating in his wrongful possession becomes absolute by the extinguishment of the former owner's title." *Ibid.* In addi-

tion, New Jersey courts were likely influenced by the established rule in England, which was that "an adverse possession of twenty years is not only a negative bar to the plaintiff's recovery in ejectment, but takes away his right of possession, and gives a positive title to the opposite party." 2 William Tidd, *The Practice of the Courts of King's Bench and Common Pleas, in Personal Actions, and Ejectment* 1195 (3d American ed. 1840). Whatever the reasons or motivations, the dichotomy between the twenty-year and thirty/sixty-year statutes has created confusion in the law.

This confusion is exemplified by the fact that our courts often have allowed title to vest after twenty years of adverse possession. *Braue, supra,* 23 *N.J.* at 16, 127 *A.*2d 1 ("While the statute of 1799 contains no specific reference establishing title nevertheless it has been construed to mean that a possession adverse for 20 years gives a title by adverse possession-an actual title as distinguished from a mere right of entry."); *Spottiswoode, supra,* 61 *N.J.L.* at 332–33, 40 *A.* 505 (deciding "that adverse possession under our statute for the period of twenty years confers title by adverse possession"); *Mayor of Newark v. Watson,* 56 *N.J.L.* 667, 675, 29 *A.* 487 (E. & A. 1894) ("[T]he defendants have acquired title by adverse possession under the seventeenth section of the act for the limitation of actions, which provides that every action for lands shall be brought within 20 years after the right or title accrued."); *Johnston v. Fitzgeorge,* 50 *N.J.L.* 470, 472, 14 *A.* 762 (Sup.Ct.1888) ("In order that an adverse possession of lands shall ripen into title, it must be continued for the full period of 20 years."); *Den ex dem. Van Wickle v. Alpough,* 3 *N.J.L.* 446, 451 (Sup.Ct.1808) (noting that if disputed possession was adverse, "it has continued for more than twenty years before action brought; and what was in its commencement, and [sic] equitable title only, has been converted by the statute into a legal one"); *Den ex dem. Cain v. McCann,* 3 *N.J.L.* 438, 441 (Sup.Ct.1808) (mentioning, in passing, that "[t]wenty years' uninterrupted adverse possession gives an absolute title").

Some cases attempted to explain the history of statutes of limitations in New Jersey in order to justify use of the twenty-year statutes to grant title through adverse possession. For example, one court explained that the English statute having that effect, 21 *Jam.* 1, became applicable to the Province of New Jersey under "the act of 1727, which declare[d], that all the English statutes concerning the limitation of *actions, real and personal,* shall be in force here." *Den ex dem. Johnson v. Morris, supra,* 7 *N.J.L.* at 11 (emphasis added). The court explained:

[U]ntil our act of 1787, limiting actions of ejectment, in certain cases, to thirty years, and our present act limiting all manner of actions for lands to twenty years, we had no operative limitation, except that contained in the first section of the 32 Henry VIII. which ... not only limit[s] the writ of right, strictly speaking, but also all manner of claims founded upon possession, unless such possession has been within three score years before such claim is made.

[*Id.* at 12.]

Thus, the court concluded that until 1727, the right of a lawful owner to eject a wrongdoer and restore himself to possession was unlimited in time; from 1727 until 1787, it was limited to sixty years; from 1787 until 1798, it was limited to either sixty or thirty years; and after 1798, it was limited to twenty years. *Id.* at 13–14. What *Morris* failed to recognize, however, is that when neither the act of 1787 nor the act of 1799 incorporated the English rule established in 21 *Jam.* 1, that omission was a recognition by the New Jersey Legislature, consistent with the Constitution of 1776, that the English law that we adopted initially remained viable only "until altered by a future law of the [New Jersey] legislature." *N.J. Const. of 1776* art. XXII.

Based on the line of cases holding that title vests in the adverse possessor after twenty years, commentators have taken New Jersey's statute of limitations for adverse possession to be, un-controversially, twenty years. For example, in his treatise on Adverse Possession, Patton stated that New Jersey, among other states, uses the same approach as that employed in the English statute: simultaneously barring the title owner's action and grant-ing the adverse possessor title to the property. Patton, *supra,* § 15.1, at 757 n. 6 (citing William Edwin Taylor, *Titles to Land by*

*Adverse Possession,* 20 *Iowa L.Rev.* 551, 562–63 & n. 35 (1935)). Yet, Patton acknowledges that only twelve state statutes expressly provide that the effect of their statutes of limitations "is not only to bar the remedy of ejectment but to take away all other remedy, right, or title of the former owner." *Id.* § 15.14, at 828–29. New Jersey is not one of those twelve states. The critical distinction between New Jersey's statutes and others including the English approach is that New Jersey also has two independent adverse possession statutes requiring longer adverse possession in order for title to vest in the adverse possessor. In fact, in his article, Taylor only mentions New Jersey's thirty/sixty-year statutes and does not assert that New Jersey's approach is analogous to the English statute. Taylor, *supra,* 20 *Iowa L.Rev.* at 562–63 & nn. 35–36.

Most recently, this Court has asserted: "Title by adverse possession may be acquired under (1) *N.J.S.A.* 2A:14–6 and 2A:14–7, (2) *N.J.S.A.* 2A:14–30, or (3) *N.J.S.A.* 2A:14–31." *Patton v. North Jersey Dist. Water Supply Comm'n.,* 93 *N.J.* 180, 185, 459 *A.*2d 1177 (1983) (footnotes omitted); *accord Devins v. Borough of Bogota,* 124 *N.J.* 570, 574, 592 *A.*2d 199 (1991). In *Patton,* we declined to "resolve whether any refinements should be made between the nature of the possession under the 20–, 30– or 60–year statutes." *Patton, supra,* 93 *N.J.* at 189, 459 *A.*2d 1177. In *Devins,* we went a step further, by stating:

> The statutory requirements vary according to the period of possession, the nature of the land possessed, and whether the adverse claim is under color of title. Two statutes, *N.J.S.A.* 2A:14–6 and *N.J.S.A.* 2A:14–7, require a twenty-year period; one, *N.J.S.A.* 2A:14–31, requires a thirty-year period for real estate held under a claim of title; and another, *N.J.S.A.* 2A:14–30, requires either thirty or sixty years, depending on whether or not the property is 'woodlands or uncultivated.'
>
> [*Devins, supra,* 124 *N.J.* at 574, 592 *A.*2d 199.]

The attempt in *Devins* to construe each of the four statutes as potentially applicable to cases involving title to land through adverse possession placed substantial reliance on the *Spottiswoode* and *Braue* approach of affirming the utility of all four statutes, but neglecting to define when each applies. *Braue* provided the following guidance: "the question as to which of the limitations

applies to a particular situation ... is [one] of substantive law to be decided by the court under the facts in accordance with the correct applicable provision." *Braue, supra,* 23 *N.J.* at 18, 127 *A.*2d 1. Although that approach purports to give effect to each of the four statutes, our prior cases have failed to clearly explain when each statute should be used.

## IV.

What then is the law regarding the four statutes? J & M argues that its title to the disputed land vested after twenty years, relying in part on case law stating that the statutes of limitations contained in the act of 1787 (the thirty/sixty-year adverse possession statutes) and the act of 1799 (the twenty-year right of entry and action to recover possession of real estate statutes) "apply[ ] to two different subjects, neither of which conflicts with the other, but both are open to the defendant, so that, if either suits his case, and is sufficient to defend his possession he is at liberty to avail himself of it, although the facts of his case may exclude him from the benefit of the other." *Spottiswoode, supra,* 61 *N.J.L.* at 329–30, 40 *A.* 505; *Braue, supra,* 23 *N.J.* at 8, 127 *A.*2d 1. J & M asserts that the quoted phrase means that in proving a claim of adverse possession of land, the adverse possessor may choose between using the twenty-year statutes or the thirty/sixty-year statutes to establish his or her claim. In other words, J & M maintains that it can choose to prove either twenty or thirty/sixty years of adverse possession.

Preliminarily, we reject J & M's contention. "[T]o consider an adverse possessor the owner of land upon the expiration of the limitation period is a legal fiction" because title should vest only after an adverse possessor has satisfied his or her "burden of establishing the elements of adverse possession, including the appropriate lapse of time" required by statute. Noel Elfant, Comment, *Compensation for the Involuntary Transfer of Property Between Private Parties: Application of a Liability Rule to the Law of Adverse Possession,* 79 *Nw. U.L.Rev.* 758, 773 (1984).

 Historically, the Court has made a distinction between a procedural statute of limitations and a substantive one. A substantive statute of limitations is found in legislation creating a cause of action that did not exist at common law. *LaFage v. Jani,* 166 *N.J.* 412, 421, 766 *A.*2d 1066 (2001); *Negron v. Llarena,* 156 *N.J.* 296, 300, 716 *A.*2d 1158 (1998). With substantive statutes of limitations, when the time in which the action must be commenced expires, both the remedy and the right are barred. *Negron, supra,* 156 *N.J.* at 300, 716 *A.*2d 1158. *A procedural statute of limitations, on the other hand, governs general causes of action, such as tort or contract actions, that were recognized under the common law. The running of a procedural statute of limitations bars only the remedy, not the right that existed at common law.* Ibid. *In addition, procedural statutes of limitations are not applied strictly and may be flexibly construed, subject to equitable principles.* Ibid. *Even substantive statutes, however, need not necessarily be construed rigidly.* Negron *confirmed that our "approach to substantive statutes of limitations has evolved to one that recognizes that their application depends on statutory interpretation focusing on legislative intent and purpose."* Id. *at 304, 716 A.2d 1158.*

 We reject J & M's contention that it is free to choose which statute should control. First, that approach ignores the plain difference between the two sets of statutes. The twenty-year statutes indicate that a person having a right of entry or a right to bring an action at law to recover possession of real estate must exercise that right within twenty years. Thus, those statutes set a time limit on when judicial authority may be invoked by a landowner to obtain possession. At common law, a landowner had a right of ejectment and a right of entry to recover possession of realty from a trespasser. Hence, those are procedural statutes of limitations in which the judicial remedy, as opposed to the right, to reclaim possession is lost after twenty years when viewed independent of *N.J.S.A.* 2A:35–1. In contrast, the thirty/sixty-year statutes focus on what actions must be taken in order to acquire title. They are substantive statutes creating a cause of action for

adverse possession that did not exist at common law. Those statutes state that when a person actually possesses real estate for thirty years, if not woodlands or uncultivated land, or thirty years, if possessed under color of law, or sixty years, if uncultivated land, that person shall be vested with title to the possessed real estate. Under *N.J.S.A.* 2A:14–30 and –31, when the thirty or sixty years expire, both the remedy and the right of the landowner are barred and title vests in the adverse possessor. Viewed in that context, we agree with *Spottiswoode* that the statutes apply to different subjects and that neither conflicts with the other.

The second reason we reject J & M's assertion that it can choose the twenty-year statute as controlling is because allowing an adverse possessor to choose which statute to apply would render the thirty/sixty year statute a nullity. After all, what adverse possessor would not choose to have his or her titles vested under the twenty-year statutes? The statutes requiring thirty- or sixty-years of adverse possession would become meaningless. A basic rule of statutory construction is to avoid an interpretation that makes one section of a statute meaningless. *Gabin v. Skyline Cabana Club*, 54 *N.J.* 550, 555, 258 *A.*2d 6 (1969); *Hoffman v. Hock*, 8 *N.J.* 397, 406–07, 86 *A.*2d 121 (1952).

Similarly, we reject First Union's contention that based on *Spottiswoode* and *Braue* the owner of record is permitted to choose which statute should apply. To the extent that those two cases so held, we disavow those holdings. Which statute should control the outcome must be decided within the framework of the operative matrix of facts in each case and must include a description of the characteristics of the land in question. That said, we recognize that the decisional law in New Jersey has not been uniform in deciding which statute controls or in interpreting the meaning of *N.J.S.A.* 2A:14–6 and –7.

Here, J & M and its tenants maintained two billboards on First Union's property for thirty-nine years before First Union asserted its right of ownership. Since the land on which the billboards have been erected is uncultivated, the sixty-year statute

of limitations has to be satisfied before J & M's right to title by adverse possession can vest. That cannot now occur on a continuous basis because First Union has interrupted the adverse possession by asserting its ownership rights as the titleholder. Once the adverse possessor's possession is interrupted after twenty years but before his or her right to title accrues pursuant to either the controlling thirty- or sixty-year substantive statute of limitations, J & M's possession is no longer "adverse and hostile, ... continu[ous] and uninterrupted," which are essential elements of the cause of action. *Patton, supra,* 93 *N.J.* at 186, 459 *A.*2d 1177. In other words, First Union's interruption of J & M's adverse possession in the thirty-ninth year destroyed the continuity element required for J & M to establish its adverse possession claim. Jesse Dukeminier & James E. Krier, *Property* 136 n. 16 (3d ed.1993).

Because J & M's adverse possession of the land has been interrupted after the passage of more than twenty years but before the passage of the requisite sixty years for title to vest in uncultivated land, J & M contends that it acquired a prescriptive easement after twenty years. We reject that contention for the same reasons stated by the Appellate Division, which concluded:

Even assuming that the limitations period for acquisition of a prescriptive easement in this State is only twenty years, regardless of the nature of the land to which the claim is made, *compare Plaza v. Flak,* 7 *N.J.* 215, 220, 81 *A.*2d 137 (1951) *with [Spiegle] v. Borough of Beach Haven,* 116 *N.J.Super.* 148, 158, 281 *A.*2d 377 (App.Div.1971),[1] J & M's use of First Union's property was possessory in nature rather than merely an easement. Two characteristics of an easement that distinguish it from a possessory interest are that an easement constitutes "a 'limited' use or enjoyment of the land" and "is not a normal incident of a possessory land interest." *Leach v. Anderl,* 218 *N.J.Super.* 18, 24, 526 *A.*2d 1096 (App.Div.1987) (quoting *Town of Kearny v. Municipal Sanitary Landfill Auth.,* 143 *N.J.Super.* 449, 459, 363 *A.*2d 390 (Law Div.1976)); *Restatement of Property* § 450.

[1] The prevailing rule, as expressed in comment a to section 460 of the *Restatement of Property* (1944), is that "[t]he 'period of prescription' is fixed, in the absence of specific statutory provision, by analogy to the period derived from the local statutes of limitations for the acquisition of title to land by adverse possession," which in this case would be the sixty-year limitations period for "uncultivated tracts" provided by *N.J.S.A.* 2A:14–30.

[*J & M, supra,* 326 *N.J.Super.* at 598, 742 *A.*2d 583.]

The fact that J & M executed a lease of the disputed land to Maxwell demonstrates that J & M was operating under a claim of possession rather than merely use and enjoyment of the land.

The Appellate Division and the trial court recognized that because the nature of the litigation is an action for possession of land under *N.J.S.A.* 2A:35–1 in which the landowner prevailed in defending its title, First Union is entitled to recover from J & M "any and all incidental damages, including mesne profits, and the full value of the use and occupation of the premises." *N.J.S.A.* 2A:35–2. Unlike the trial court, the Appellate Division ordered that those damages cover "the full six-year period preceding the filing of First Union's counterclaim." *J & M, supra,* 326 *N.J.Super.* at 599, 742 *A.2d* 583. The matter was remanded to the trial court to fix the amount of the rent. First Union's right to collect those damages based on *N.J.S.A.* 2A:35–1 and –2 was in lieu of pursuing an ejectment action. Neither party has questioned those damages in this appeal. Nonetheless, we are constrained to address what, if any, impact the twenty-year statutes have on proceedings conducted under *N.J.S.A.* 2A:35–1 after the passage of twenty years.

■ As noted, when the forerunner to *N.J.S.A.* 2A:35–1 was modified in 1948, the amendatory statute was entitled "An Act concerning civil actions for possession of land, superceding actions of ejectment." *L.* 1948, *c.* 373. "That statute replaces the common-law action of ejectment and ordinarily is addressed to matters involving both claims to possession by a [landowner] as well as claims by him—real or constructive—to title to the realty." *Aeon Realty Co. v. Arth,* 144 *N.J.Super.* 309, 313, 365 *A.2d* 477 (App.Div.1976) (citing *Marder v. Realty Constr. Co.,* 84 *N.J.Super.* 313, 321, 202 *A.2d* 175 (App.Div.), *aff'd,* 43 *N.J.* 508, 205 *A.2d* 744 (1964)). In *Marder,* which involved an action for ejectment based on *N.J.S.A.* 2A:35–1, the Appellate Division observed that "[t]here can be no doubt that *N.J.S.A.* 2A:35–1 is intended to allow a remedy to one who claims title to property in the possession of another. The statute replaces the common law action of eject-

ment." *Marder, supra,* 84 *N.J.Super.* at 320, 202 *A.2d* 175. Consequently, a landowner can elect to pursue an action in the Superior Court claiming title to real property or claiming the right to possession in lieu of an ejectment action, *Gretkowski v. Wojcie-chowski,* 26 *N.J.Super.* 245, 247, 97 *A.*2d 701 (App.Div.1953), even when the wrongful possessor has been in possession for twenty years or more. *Stump, supra,* 314 *N.J.Super.* at 565, 582, 715 *A.*2d 1006. We hold, therefore, that because *N.J.S.A.* 2A:35–1 contains no specified time in which proceedings must be instituted thereunder, its practical effect is to supercede those provisions in *N.J.S.A.* 2A:14–6 and –7 that create repose for common-law ejectment actions after twenty years. If we have misperceived the Legislature's intended scope of *N.J.S.A.* 2A:35–1, or any other statute we have interpreted in this opinion, the Legislature is of course free to correct our interpretation.

## V.

The final question is whether our decision should be retroactive or prospective. After examining the weighty consider-ations that underlie the *stare decisis* doctrine, which has at its core the need for predictability in cases, we have come to the conclusion that judges of earlier generations who concluded that *N.J.S.A.* 2A:14–6 and *N.J.S.A.* 2A:14–7 vest title in an adverse possessor after twenty years misinterpreted our statutory law. *LaFage, supra,* 166 *N.J.* at 438, 766 *A.*2d 1066. "[W]hen govern-ing decisions are unworkable or are badly reasoned," courts are not constrained to follow precedent. *Payne v. Tennessee,* 501 *U.S.* 808, 827, 111 *S.Ct.* 2597, 2609, 115 *L.Ed.*2d 720, 736 (1991). "Since [the] earliest days our courts have recognized and discharged the vital responsibility of re-examining questioned decisions whether they be their own or those of their predecessors." *Collopy v. Newark Eye & Ear Infirmary,* 27 *N.J.* 29, 46, 141 *A.*2d 276 (1958). "As far as can be seen, overruling the [holding in a line of cases that vests title in an adverse possessor after twenty years] will not result in undermining any of the values which *stare decisis* is

intended to foster," if the decision is made prospective. *Mannillo v. Gorski*, 54 *N.J.* 378, 386, 255 *A.2d* 258 (1969). Here, there was historical error.

 Ordinarily, the overruling of a judicial decision should be given retrospective effect. *Fox v. Snow*, 6 *N.J.* 12, 13, 76 *A.2d* 877 (1950). However, there has been justifiable reliance on decisional law that applied the twenty-year statutes of limitations as the basis for the entry of a judgment for adverse possession. To avoid confusion or create a cloud on any title, we make our decision applicable to the present case and any case that has not been decided in the trial court. We do not make our decision retroactive because stability and predictability in real property law are extremely important. We emphasize that the present decision will have no effect on titles established by adverse possession in the trial court pursuant to either of our statutes prior to the date of this decision.

## VI.

The judgment of the Appellate Division is affirmed in part, reversed in part, and modified. The matter is remanded to the Law Division to determine the amount of rent that is due.

*For affirmance in part, reversal in part, and modification—* Chief Justice PORTIZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.